UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 MUHAMMAD SHAHAB,
D-2 CHRISTOPHER COLLINS,
D-3 HASSAN AKHTAR,
D-4 CURTIS MALLORY,
D-5 MOHAMED EL-FALLAL,
D-6 JESSICA VIGIL,
D-7 TARIQ CHAUDHARY,
D-8 FAISAL CHAUDRY,
D-9 VISHNU PRADEEP MEDA,
D-10 PRAMOD RAVAL, M.D.,
D-11 GUY ROSS,
D-12 LURA BARRETT,
D-13 STEPHEN CARTIER,

    Defendants.
_____/

Case:2:10-cr-20014
Judge: Hood, Denise Page
MJ: Morgan, Virginia M
Filed: 01-12-2010 At 08:37 AM
INDI USA V. SEALED MATTER (DA)

VIO.: 18 U.S.C. § 1349
   18 U.S.C. § 371
   18 U.S.C. § 1956
   18 U.S.C. § 1957
   18 U.S.C. § 982
   18 U.S.C. § 2

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

  1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United State Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare Program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part A covered physical and occupational therapy services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. The physical therapy, occupational therapy and other services at issue in this indictment were covered by Part A and Part B.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B, which included home visits, in the state of Michigan. TrustSolutions, LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan.

5. By becoming a participating provider in Medicare, enrolled providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, is assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider renders a service, the provider submits a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider is associated with a clinic, Medicare Part B required that the

individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers are given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described on the claim form.

8. In order to receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

9. A home health agency is an entity that provides health services, including but not limited to skilled nursing and physical and occupational therapy, to homebound patients.

10. Adult foster care (AFC) facilities are residential settings that provide 24-hour personal care, protection, and supervision for individuals who are developmentally disabled, mentally ill, physically handicapped or aged who cannot live alone but who do not need continuous nursing care.

11. Patient Choice Home Healthcare, Inc. (PCHH) was a Michigan corporation, doing business at 21700 Greenfield Road, Suite 228, Oak Park, Michigan. PCHH was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology and/or skilled nursing services to patients. PCHH was a Medicare provider and submitted claims directly to Medicare.

12. All American Home Care, Inc. (AAHC) was a Michigan corporation, doing business at 21700 Greenfield Road, Suite 230, Oak Park, Michigan. AAHC was a home health agency that purportedly provided in home physical therapy, occupational therapy, speech pathology and/or skilled nursing services to patients. AAHC was a Medicare provider and submitted claims directly to Medicare.

13. AAA Marketer and Consulting, LLC (AAA Marketer) was a Michigan limited liability company, doing business at 5016 Silverwood Court, West Bloomfield, Michigan that purportedly provided patient recruiting and consulting services.

14. Mars Management & Consulting, LLC (Mars) was a Michigan limited liability company, doing business at 5016 Silverwood Court, West Bloomfield, Michigan that purportedly provided consulting services.

15. Mallory Marketing, LLC (Mallory Marketing), was a Michigan corporation, doing business at 27100 Greenfield Road, Suite 240, Oak Park, Michigan that provided paid patient referrals to home health agencies

16. Barrett AFC 1, doing business at 274 Auburn, Pontiac, Michigan, Barrett AFC 2, doing business at 280 Orchard, Pontiac, Michigan, and Barrett AFC 3, doing business at 337 West Kennett, Pontiac, Michigan, were Michigan businesses that purportedly provided adult foster care (AFCs). Barrett AFCs 1, 2, and 3 were owned and operated by defendant LURA BARRETT.

17. Hilltop Estates, Inc. (Hilltop Estates) was a Michigan corporation, doing business at 841 Auburn Avenue, Pontiac, Michigan. Hilltop Estates was an AFC facility owned by defendant STEPHEN CARTIER.

18. SH Consultant and Staffing, Inc. was a Michigan corporation, doing business on 33040 Karin Drive, Suite 212, Sterling Heights, Michigan owned by HASSAN AKHTAR.

19. MUHAMMAD SHAHAB, a resident of Oakland County, Michigan was an owner and controller of PCHH, AAA Marketer and Mars.

20. CHRISTOPHER COLLINS, a resident of Wayne County, Michigan, was an owner and controller of AAHC and recruited patients for PCHC and AAHC.

21. HASSAN AKHTAR, a resident of Oakland County, Michigan, was an owner and controller of AAHC.

22. CURTIS MALLORY, a resident of Wayne County, Michigan, was an owner and controller of Mallory Marketing. Mallory Marketing recruited patients for PCHC and AAHC.

23. PRAMOD RAVAL, M.D., a resident of Oakland County, Michigan, was a physician licensed in the state of Michigan.

24. MOHAMMED EL-FALLAL, resident of Oakland County, Michigan, was an unlicensed physician who signed drugs prescriptions and physical therapy referrals for patients purportedly treated at PCHH and AAHC.

25. JESSICA VIGIL, a resident of Oakland County, Michigan, was a physical therapist licensed in the state of Michigan.

26. TARIQ CHAUDHARY, a resident of Oakland County, Michigan, was a physical therapy assistant licensed in the state of Michigan.

27. FAISAL CHAUDRY, a resident of Oakland County, Michigan, was a physical therapy assistant licensed in the state of Michigan.

28. VISHNU MEDA, a resident of Oakland County, Michigan, was a licensed physical therapy assistant.

29.  GUY ROSS, a resident of Oakland County, Michigan, was a physician's assistant.

30.  LURA BARRETT, a resident of Oakland County, Michigan, was the owner and operator of AFC facilities.

31.  STEPHEN CARTIER, a resident of Oakland County, Michigan was the owner and operator of an AFC facility.

## COUNT 1
### (18 U.S.C. § 1349 - Health Care Fraud Conspiracy)

**D-1 MUHAMMAD SHAHAB**
**D-2 CHRISTOPHER COLLINS**
**D-3 HASSAN AKHTAR**
**D-4 CURTIS MALLORY**
**D-5 MOHAMED EL-FALLAL**
**D-6 JESSICA VIGIL**
**D-7 TARIQ CHAUDHARY**
**D-8 FAISAL CHAUDRY**
**D-9 VISHNU MEDA**

32.  Paragraphs 1 through 31 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

33.  From in or around August 2007 and continuing through in or around September 2009, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, MUHAMMAD SHAHAB, CHRISTOPHER COLLINS, HASSAN AKHTAR, CURTIS MALLORY, MOHAMMED EL-FALLAL, JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY and VISHNU MEDA did willfully and knowingly combine, conspire, confederate and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to

obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and service.

### Purpose of the Conspiracy

34. It was a purpose of the conspiracy for defendants MUHAMMAD SHAHAB, CHRISTOPHER COLLINS, HASSAN AKHTAR, CURTIS MALLORY, MOHAMMED EL-FALLAL, JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY, VISHNU MEDA and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for physical therapy, occupational therapy and other services; (c) soliciting and receiving kickbacks and in return for arranging for the furnishing of services for which payment may be made by Medicare by providing their Medicare beneficiary numbers, which formed the basis of claims filed for physical therapy, occupational therapy, and other services; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

35. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

36. MUHAMMAD SHAHAB would maintain a valid Medicare provider number for PCHC to submit Medicare claims for the cost of physical therapy, occupational therapy and other services that were medically unnecessary and were not provided.

37. HASSAN AKHTAR, CHRISTOPHER COLLINS and others would maintain a valid Medicare provider number for AAHC to submit Medicare claims for the cost of physical therapy, occupational therapy and other services that were medically unnecessary and were not provided.

38. MUHAMMAD SHAHAB would control the day-to-day operation of PCHC and AAHC.

39. HASSAN AKHTAR and CHRISTOPHER COLLINS would assist MUHAMMAD SHAHAB in controlling the day-to-day operation of AAHC.

40. MUHAMMAD SHAHAB, CURTIS MALLORY and CHRISTOPHER COLLINS and other conspirators would offer and pay kickbacks and bribes to Medicare beneficiaries who served as purported patients at PCHC and AAHC. The Medicare beneficiaries would receive cash and other remuneration in exchange for signing documents making it appear that they had received the treatments being billed to Medicare, when in fact such treatments were medically unnecessary and were not provided. Defendants CURTIS MALLORY and CHRISTOPHER COLLINS would receive payments from MUHAMMAD SHAHAB for each patient they recruited through this kickback scheme.

41. Physicians would sign medical documentation ordering physical therapy, occupational therapy, and other services purportedly provided and billed to Medicare by PCHC and AAHC, which were medically unnecessary and were not provided. Defendant MUHAMMED EL-FALLAL was an unlicensed physician who would use the identity of another

licensed physician to sign prescriptions for medications and physical therapy referrals that were medically unnecessary and were not provided.

42. MUHAMMAD SHAHAB, HASSAN AKHTAR, JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY and VISHNU MEDA would fabricate medical and billing documents which falsely stated that patients had received specific therapeutic treatments, when, in fact, the patients had not received the treatments reflected on those documents.

43. HASSAN AKHTAR and several co-conspirators would fabricate medical and billing records to facilitate the commencement of home health visits at PCHC and AAHC.

44. JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY, VISHNU MEDA would sign therapy notes and other records for therapy that would be billed to Medicare by AAHC, and made it appear that physical therapy, occupational therapy and other services had been provided, when in fact, it had not.

45. AAHC would submit claims to Medicare seeking reimbursement for the cost of physical and occupational therapy purportedly provided to Medicare beneficiaries by defendants JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRAY and VISHNU MEDA.

46. MUHAMMAD SHAHAB, HASSAN AKHTAR, CHRISTOPHER COLLINS, CURTIS MALLORY, MOHAMMED EL-FALLAL, JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY and VISHNU MEDA would cause PCHC and AAHC to submit claims for approximately $14.5 million to Medicare for the cost of physical therapy, occupational therapy and other services.

47. The defendants would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of PCHC and AAHC to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (18 U.S.C. § 371 - Conspiracy)

**D-1 MUHAMMAD SHAHAB**
**D-10 PRAMOD RAVAL, M.D.**
**D-11 GUY ROSS**
**D-12 LURA BARRETT**
**D-13 STEPHEN CARTIER**

48.     Paragraphs 1 through 31 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

49.     From in or around June 2006, and continuing through in or around September 2009, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, MUHAMMAD SHAHAB, PRAMOD RAVAL, M.D., GUY ROSS, LURA BARRETT, and STEPHEN CARTIER did willfully and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by knowingly and willfully soliciting or receiveing any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring

an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

50. It was a purpose of the conspiracy for defendants MUHAMMAD SHAHAB, PRAMOD RAVAL, M.D., GUY ROSS, LURA BARRETT, STEPHEN CARTIER and others to unlawfully enrich themselves by offering, paying, soliciting and receiving kickbacks and bribes in exchange for the use of Medicare numbers for (1) patients under their care, or (2) beneficiaries under their custody and control by SHAHAB as the bases of claims filed for physical therapy services.

### MANNER AND MEANS

51. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

52. PRAMOD RAVAL, M.D. would establish and operate a medical practice at 24661 Coolidge Highway, Oak Park, Michigan and other locations.

53. GUY ROSS would work as a physician's assistant for a physician whose practice is located in Southfield, Michigan.

54. LURA BARRETT would operate Barrett AFC 1, Barrett AFC 2, and incorporate Barrett AFC 3 in Oakland County, Michigan.

55. STEPHEN CARTIER would incorporate Hilltop Estates in Oakland County, Michigan.

56. MUHAMMAD SHAHAB would incorporate and/or control two HHAs in Oakland County, Michigan – PCHC and AAHC – for the purpose of billing Medicare for

purportedly providing in home physical therapy, occupational therapy, speech pathology and/or skilled nursing services to patients.

57. MUHAMMAD SHAHAB would write checks from the accounts of one of his companies, AAA Marketer, and would provide the checks to defendant PRAMOD RAVAL, M.D. and, at PRAMOD RAVAL, M.D.'s direction, to two companies associated with PRAMOD RAVAL, M.D., Voak Marketing and DSK construction. These checks were in exchange for the referral of Medicare beneficiaries to be billed by PCHC and AAHC.

58. MUHAMMAD SHAHAB would pay PRAMOD RAVAL, M.D. or entities related to PRAMOD RAVAL, M.D., more than $170,000 for Medicare beneficiary referrals. In exchange for the payments, MUHAMMAD SHAHAB would receive Medicare beneficiary referrals from PRAMOD RAVAL, M.D. over a two year period.

59. MUHAMMAD SHAHAB typically would pay GUY ROSS $500 per Medicare beneficiary for beneficiary referrals. These payments were made by checks drawn from PCHC and AAA Marketer's accounts.

60. MUHAMMAD SHAHAB would write checks or withdraw cash from his personal account or the accounts of AAA Marketer and/or Mars Consulting, companies he owned, and would give the checks and cash to defendants LURA BARRETT and STEPHEN CARTIER in exchange for the opportunity to bill for Medicare beneficiaries residing at defendants' AFC facilities.

61. MUHAMMAD SHAHAB typically would pay defendant LURA BARRETT $300 per Medicare beneficiary to bill Medicare for beneficiaries residing at BARRETT's three facilities. MUHAMMAD SHAHAB paid BARRETT these amounts in exchange for the

opportunity to bill for purported physical therapy treatments provided to Medicare beneficiaries residing at these facilities.

62. MUHAMMAD SHAHAB typically would pay defendant STEPHEN CARTIER $2000 per month in exchange for the opportunity to bill for purported physical therapy treatments provided to Medicare beneficiaries residing at Hilltop Estates.

63. From September 2008 through September 2009, MUHAMMAD SHAHAB and LURA BARRETT would cause the submission at least $600,000 of claims to Medicare under the provider numbers of home health agencies he owned or operated, seeking reimbursement for the costs of physical therapy services for Medicare beneficiaries residing at BARRETT's AFC facilities.

64. From October 2008 through June 2009, MUHAMMAD SHAHAB and STEPHEN CARTIER would cause the submission of approximately $270,000 of claims to Medicare under the provider numbers of the provider numbers of home health agencies he owned or operated, seeking reimbursement for the costs of physical therapy services for Medicare beneficiaries residing at CARTIER's AFC facility.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

65. On or about October 17, 2008, MUHAMMAD SHAHAB paid LURA BARRETT $6900 by check drawn from his AAA Marketer account at LaSalle Bank in exchange for the opportunity to bill Medicare for Medicare beneficiaries residing at LURA BARRETT's AFC facilities.

66. On or about the first week of April 2009, defendant MUHAMMAD SHAHAB paid STEPHEN CARTIER $2000 in cash drawn from his AAA Marketer and/or personal account in exchange for the opportunity to bill Medicare for Medicare beneficiaries residing at STEPHEN CARTIER's AFC facilities.

67. On or about June 8, 2006, defendant MUHAMMAD SHAHAB paid Voak Marketing, at PRAMOD RAVAL, M.D.'s direction, $50,000 by check drawn from his AAA Marketer in exchange for Medicare beneficiary referrals.

68. On or about October 17, 2008, MUHAMMAD SHAHAB paid GUY ROSS $1,000 by check drawn from the PCHC bank account at LaSalle Bank for referring two Medicare beneficiaries to PCHC.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 3-4
### (18 U.S.C. §§ 1957 and 2 – Money Laundering)

### D-1 MUHAMMAD SHAHAB
### D-3 HASSAN AKHTAR

69. On or about the dates set forth below, in Oakland Counties, in the Eastern District of Michigan, and elsewhere, MUHAMMAD SHAHAB and HASSAN AKHTAR knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, health care fraud, in violation of Title 18, United States Code, Section 1347:

| Count | Defendant | On or about Date | Financial Transaction |
|---|---|---|---|
| 3 | MUHAMMAD SHAHAB | 8/8/08 | Check from a PCHC account at Bank of America, #5405786947, in the amount of $50,000, made payable to AAA Marketer, deposited into a AAA Marketer account at Bank of America, #5404946880 |
| 4 | HASSAN AKHTAR | 9/26/08 | Check from an AAHC account at Bank of America, #54053469413, in the amount of $30,000, made payable to SH Consultant and Staffing, Inc., deposited into a SH Consultant and Staffing, Inc. account at National City Bank, #986182188 |

All in violation of Title 18, United States Code, Section 1957 and 2.

### COUNTS 5-6
### (18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 – Money Laundering)

### D-1 MUHAMMAD SHAHAB
### D-3 HASSAN AKHTAR

70. On or about the dates specified as to each count below, in Oakland Counties, in the Eastern District of Michigan, and elsewhere, MUHAMMAD SHAHAB and HASSAN AKHTAR did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, health care fraud, in violation of Title 18, United States Code, Section 1347:

| Count | Defendant(s) | On or about Date | Financial Transaction |
|---|---|---|---|
| 5 | MUHAMMAD SHAHAB | 12/29/08 | Check from a PCHC account at Bank of America, #5405786947, in the amount of $50,000, made payable to AAA Marketer, deposited into a AAA Marketer account at Bank of America, #5404946880 |
| 6 | HASSAN AKHTAR | 7/30/08 | Check from an AAHC account at Bank of America, #54053469413, in the amount of $23,500, made payable to SH Consultant and Staffing, Inc., deposited into a SH Consultant and Staffing, Inc. account at National City Bank, #986182188 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

D-1 MUHAMMAD SHAHAB
D-2 CHRISTOPHER COLLINS
D-3 HASSAN AKHTAR
D-4 CURTIS MALLORY
D-5 MOHAMED EL-FALLAL
D-6 JESSICA VIGIL
D-7 TARIQ CHAUDHARY
D-8 FAISAL CHAUDRY
D-9 VISHNU PRADEEP MEDA
D-10 PRAMOD RAVAL, M.D.
D-11 GUY ROSS
D-12 LURA BARRETT
D-13 STEPHEN CARTIER

71. The allegations contained in Counts 1 through 6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property.

72. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of MUHAMMAD SHAHAB, CHRISTOPHER COLLINS, HASSAN AKHTAR, CURTIS MALLORY, MOHAMMED EL-FALLAL, JESSICA VIGIL, TARIQ CHAUDHARY, FAISAL CHAUDRY, VISHNU PRADEEP MEDA, PRAMOD RAVAL, M.D., GUY ROSS, LURA BARRETT, and STEPHEN CARTIER for the offense charged in Counts 1 and 2 of this Indictment, the DEFENDANTS shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offense or a conspiracy to commit such offense. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

73. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the defendants, MUHAMMAD SHAHAB and HASSAN AKHTAR, for the money laundering offenses charged in Counts 3-6 of this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property including the total amount laundered as to which the United States may seek a forfeiture money judgment.

74. If any of the property described in paragraphs 73-74 hereof as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1) and or 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendants --

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of this Court;

    d.    has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), intends to seek forfeiture of all other property of the defendants up to the value of the forfeitable property described in paragraphs 73-74.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

s/GEJAA T. GOBENA
GEJAA T. GOBENA
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
Bond Building, Third Floor
Washington, D.C. 20005
Phone: (202) 307-2005
      (313) 226-0831
Email: Gejaa.Gobena@usdoj.gov

s/SHELDON LIGHT
SHELDON LIGHT
Assistant United States Attorney
Chief, Economic Crimes Unit
U.S. Attorney's Office
Eastern District of Michigan
211 W. Fort St. Suite 2001
Detroit, MI 48226
Phone (202)-226-9732
Email: Sheldon.Light@usdoj.gov

s/JOHN K. NEAL
JOHN K. NEAL
Senior Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
Bond Building, Third Floor
Washington, D.C. 20005
Phone: (202) 305-1145
      (313) 226-0836
Email: John.Neal@usdoj.gov

s/ KIRK OGROSKY
KIRK OGROSKY
Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
Bond Building, Third Floor
Washington, D.C. 20005
Phone: (202) 616-0429
Email: Kirk.Ogrosky@usdoj.gov

Dated: January 12, 2010

| United States District Court<br>Eastern District of Michigan | Criminal Case Cove[r] | Case: 2:10-cr-20014<br>Judge: Hood, Denise Page<br>MJ: Morgan, Virginia M<br>Filed: 01-12-2010 At 08:37 AM<br>INDI USA V. SEALED MATTER (DA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to comple[te]

**Reassignment/Recusal Information**  This matter was opened in the USAO prior to August 15, 2008   [ ]

**Companion Case Information**

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    [X] No | AUSA's Initials: |

Case Title: USA v.   D-1   MOHAMMAD SHAHAB, et al.

County where offense occurred :   WAYNE,  OAKLAND

Check One:    [X] Felony    ☐ Misdemeanor    ☐ Petty

　　X  Indictment/＿＿ Information --- **no** prior complaint.
　　＿ Indictment/＿＿ Information --- based upon prior complaint [Case number:
　　＿ Indictment/＿＿ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No: ＿＿＿＿＿＿＿＿＿＿    Judge: ＿＿＿＿＿＿＿＿＿＿
　　☐ Original case was terminated; no additional charges or defendants.
　　☐ Corrects errors; no additional charges or defendants.
　　☐ Involves, for plea purposes, different charges or adds counts.
　　☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

01/12/2010
Date

Gejaa Gobena
Trial Attorney, Criminal Division
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3227
Phone:  (313) 226-0831
DC Phone: (202)-305-1310
Fax: (313) 226-2372
E-Mail: Gejaa.Gobena@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09